IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| TOMMY STEELE, DANNY STEELE, JOSE PONCE, PABLO PONCE, MANUEL PONCE, GARLAND TOSH, HUMBERTO RODRIGUEZ, FRANCISCO DIAZ, ERICK GONZALEZ, AND KRISTOPHER EMBODY<br>   PLAINTIFFS<br><br>VS.<br><br>DREBCO DIRECTIONAL, LLC, DREBEN GEARNER, III, AND KARA GEARNER<br>   DEFENDANTS | § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 6:24-CV-505-JCB<br><br><br><br><br>JURY DEMANDED |

## PLAINTIFFS' RESPONSE TO
## DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT

Plaintiffs Tommy Steele ("TJ") , Danny Steele, Pablo Ponce aka Pablo Ponce Bocanegra, Jose Ponce, Manuel Ponce aka Manuel Ponce Bocanegra, Humberto Rodriguez, Francisco Diaz, Garland Tosh, Erick Gonzalez, and Kristoper Embody (collectively "Plaintiffs") file this Response to the Partial Motion for Summary Judgment filed by Drebco Directional, LLC ("Drebco"), Dreben Gearner, III ("Sammy"), and Kara Gearner ("Kara") (collectively "Defendants") and would respectfully show the Court as follows:

### I.   INTRODUCTION AND SUMMARY

Defendants have filed a motion for partial summary judgment arguing that (1) Defendants Dreben "Sammy" Gearner and Kara Gearner are not individually liable under the FLSA as a matter of law; (2) Plaintiffs were non-employee independent contractors as a matter of law; and (3)

Plaintiff TJ Steele qualifies for both the FLSA outside sales exemption and executive exemption. Each argument easily fails.

As briefed below, the Gearners were directly and intimately involved in operating Drebco, the company, more than sufficient to trigger individual FLSA liability. The fact that they were not on jobsites digging with shovels or operating drilling rigs does not change this conclusion one bit.

Plaintiffs were so clearly employees and not independent contractors that summary judgment is more than likely appropriate in Plaintiffs' favor on the issue. Defendants' testimony and their own witnesses' testimony are more than adequate to raise a genuine fact issue. For example, Defendants actually admit that Plaintiff Rodriguez—a crewmember just like the other Plaintiffs—was properly designated as an employee. When Plaintiffs' testimony is also reviewed, the conclusion that they were all employees is obvious.

TJ qualifies for neither overtime exemption as the evidence, including more Defendant admissions, demonstrates that his primary duty was manual labor on the jobsites, not making outside sales or managing the enterprise.

For these reasons, Defendants' motion should be denied.

## II. SUMMARY JUDGMENT EVIDENCE

The following is a list of competent summary judgment evidence cited in and attached to this Response:

    Exhibit 1 – Kara Gearner Deposition Excerpts
    Exhibit 2 - Dreben Gearner Deposition Excerpts
    Exhibit 3 - TJ Steele Deposition Excerpts
    Exhibit 4 - Keen Glover Deposition Excerpts
    Exhibit 5 - Plaintiffs' Answers to Court's Interrogatories
    Exhibit 6 - Defendants' Answers to Interrogatories

## III. STATEMENT OF ISSUES RESPONSE

A. *Have Defendants shown that there is no genuine issue of material fact that Sammy Gearner and Kara Gearner were not sufficiently involved with Drebco's operations to incur individual liability under the FLSA?* The Gearners were intimately

    involved in operating Drebco and sufficient summary judgment evidence is adduced to demonstrate this fact.

B. *Have Plaintiffs TJ and Danny Steele brought breach of contract claims against the individual defendants?* Plaintiffs TJ and Danny Steele are not alleging breach of contract claims against the Gearners, individually.

C. *Have Defendants shown that there is no genuine issue of material fact that eight of the Plaintiffs were nonemployee independent contractors under the FLSA?* The eight Plaintiffs at issue easily present a fact issue regarding whether they were Defendants' employees.

D. *Despite Defendants not listing the issue on the "Statement of Issues" section of their Motion, the body of the Motion alleges that Defendants have proven as a matter of law that Plaintiff TJ Steele qualifies for both the FLSA outside sales exemption and executive exemption.* TJ's primary duty was indisputably manual labor as a crewmember, which prevents him from qualifying for either exemption.

## IV. STATEMENT OF UNDISPUTED FACTS RESPONSE

### A. DEFENDANTS' STATEMENT OF FACTS IS LARGELY UNSUPPORTED.

Defendants' "Statement of Undisputed Material Facts" contains 14 numbered statements of fact. However, it only contains two citations to summary judgment evidence; 12 of the alleged factual statements contain no citation support at all.

Defendants listed and attached 25 exhibits to their Motion, but only two of the exhibits are actually cited in any portion of the Motion. (Ex. 22 on Page 10 and Ex. 25 on Page 4). Therefore, the only two facts supported by citations to summary judgment evidence are:

1. TJ Steele declared bankruptcy on December 9, 2024 and was discharged on May 16, 2025. Motion, pg. 4.

2. TJ testified in a different case that the ownership of some of Drebco's equipment was disputed as possibly owned by D&G Directional. Motion, pg. 10.

As a general rule, when evidence exists in the summary judgment record but the party fails to refer to it in its motion or response, that evidence is **not** properly before the district court. *Outley v. Luke & Assocs.*, 840 F.3d 212, 217 (5th Cir. 2016). Rule 56 requires the party asserting a fact in summary judgment briefing to cite to "particular parts of materials in the record" and states that "the court need consider only the cited materials." FED. R. CIV. P. 56.

Further, this Court's Local Rules require a movant support its motion with "appropriate citations to proper summary judgment evidence," which means "excerpted evidentiary materials that are attached to the motion or response" and "referred to by page, and if possible, line." LOCAL RULE CV-56. The Court makes clear that it "will not scour the record in an attempt to unearth undesignated" fact. *Id*. Plaintiffs ask the Court to refuse to do so in accordance with its Local Rules.

### B. PLAINTIFFS' STATEMENTS OF FACT IN RESPONSE.

Defendants' references to D&G Directional and the living situation of the Steeles and Gearners are wholly irrelevant to this case, in general, and the summary judgment issues, specifically. Motion, §§ IV(1)-(6).

Plaintiffs agree that the Gearners own 100% of Drebco. *Id*. at §§ IV(7)-(8).

Defendants' statement of TJ's duties is inaccurate. *Id*. § IV(9). TJ's job consisted almost exclusively of performing manual labor on jobsites as a part of one of Drebco's crews. Ex. 5, TJ, Int. 4; Ex. 2, 92:16-24; Ex. 3, 103:24 – 104:4, Ex. 4, 58:4-21. Manual labor in drilling operations constituted nearly all of TJ's worktime. Ex. 5, TJ, Int. 4. As possibly the most experienced worker on the jobsites, TJ helped other workers for the crew he happened to be working with. Ex. 3, 77:25 - 78:9. However, Drebco had multiple crews working simultaneously on jobsites very distant from each other for much of the period covered by this suit, and a different worker took the lead laborer

position on the jobsites on which TJ was not present. Ex. 4, 30:2-13, 54:2 – 55:5; Ex. 2, 84:5 – 85:10.

TJ did not hire or fire workers; Sammy and Kara Gearner made the final hiring decisions. Ex. 2, 38:22-25; Ex. 3, 77:14-24, 78:17 – 79:2, 83:25 – 84:22. Sammy and TJ disagreed on who Drebco should hire and fire at times, and, when such disagreements occurred, Sammy made the final decision despite TJ's recommendations. Ex. 2, 43:19 – 44:10; Ex. 3, 83:25 – 84:22. The Gearners also made the final decision on what workers were assigned to which jobsite, the job pricing, and the work schedule. Ex. 3, 82:17 – 83:3, 83:12-19, 86:5-13. Sammy also dealt with employee complaints when they arose. Ex. 4, 42:10-24.

The Gearners exclusively made the decisions on who was designated an employee or independent contractor and who was paid overtime and who was not. Ex. 1, 28:12-20. The Gearners, in practice, paid overtime to crewmembers who were paid hourly and did not pay overtime to crewmembers who were paid a day rate; this practice did not come from TJ. Ex. 1, 28:12-20, 34:13-16; Ex. 2, 65:1-4. Tellingly, the Gearners have been owning and operating businesses for decades prior to Drebco, and they were familiar and had experience with paying employees overtime and not paying nonemployee contractors overtime for many years. Ex. 1, 8:14- 9:9, 11:16 – 12:2, 19:2-14, 35:7-14; Ex. 2, 55:12 – 56:1.

The Gearners admitted that they personally handled payroll, onboarding documents, bill payment, insurance, employee recordkeeping, and invoicing. Ex. 6, Int 1; Ex. 1, 21:6-17. The workers reported their time and/or days worked directly to the Gearners. Ex. 1, 23:17-25; Ex. 4, 31:14-25.

## V. SUBSTANTIVE RESPONSE

### A. INDIVIDUAL LIABILITY UNDER THE FLSA

Defendants argue that there is no genuine issue of material fact that Defendants Dreben "Sammy" Gearner and Kara Gearner cannot be individually liable under the FLSA given their roles with Drebco. This is incorrect. The Gearners exerted control over Drebco's operations and the terms and condition of Plaintiff's work—in particular, Drebco's pay and time policies—more than sufficient to trigger individual liability under the FLSA.

### 1. Applicable Law

FLSA Plaintiffs can recover unpaid overtime from an employer, which the statute defines as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Supreme Court has made clear that this definition is expansive and covers any employer, including a corporate officer, with "managerial responsibilities" and "substantial control of the terms and conditions of the [employer's] work." *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984) (quoting *Falk v. Brennan*, 414 U.S. 190, 195, 94 S. Ct. [*285] 427, 38 L. Ed. 2d 406 (1973)).

Employers under the FLSA are jointly and severally liable for unpaid overtime, and if violations are found, the defendant company and defendant individuals may be jointly and severally liable. *Hernandez v. Larry Miller Roofing, Inc.*, 628 F. App'x 281, 284-85 (5th Cir. 2016). To determine whether an individual is an employer, the court considers factors such as whether the alleged employer (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, or (4) maintained employment records. *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012).

For example, in *Donovan*, the president of the defendant company was individually liable because he controlled the company's finances, authorized the policies that dealt with FLSA compliance, selected hotel managers, occasionally travelled to inspect locations, and the company was a part of his family business. 747 F.2d at 972.

Similarly, in *Roche v. S-3 Pump Serv*, the owner/CEO of the defendant company was individually liable under the FLSA because he had the power to hire and fire employees (though he did not actually interview or fire any of the plaintiffs), was responsible for employment-related decisions (even though he hired HR managers), made the decisions that determined FLSA compliance (even though he did not directly supervise the plaintiff), made the decision on whether the plaintiffs were designed employees or contractors, and monitored payroll practices. 154 F. Supp. 3d 441, 452 (W.D. Tex. 2016).

### 2. The Gearners were sufficiently involved to trigger FLSA liability.

First off, all ten Plaintiffs unequivocally identified the Gearners as their immediate supervisors. Ex. 5, Int. 2. This, alone, is sufficient to raise a fact issue precluding summary judgment, but there is plenty more evidence in the record.

As mentioned above the Gearners:

- Handled payroll, onboarding documents, bill payment, insurance, employee recordkeeping, and invoicing. Ex. 6, Int. 1; Ex. 1, 21:6-17.
- Received reports of worker time and/or days worked directly. Ex. 1, 23:17-25; Ex. 4, 31:14-25
- Made final hiring decisions. Ex. 3, 77:14-24, 78:17 – 79:2.
- Made final decisions despite TJ's recommendations when they disagreed on hiring/firing decision. Ex. 2, 43:19 – 44:10; Ex. 3, 83:25 – 84:22.

- Decided on what workers were assigned to which jobsite, the job pricing, and the work schedule. Ex. 3, 82:17 – 83:3, 83:12-19, 86:5-13.
- Dealt with employee complaints when they arose. Ex. 4, 42:10-24.
- Determined, exclusively, who was designated an employee or independent contractor and who was paid overtime and who was not. Ex. 1, 28:12-20.

Therefore, there is competent summary judgment evidence of all four *Gray* factors: (1) power to hire and fire the employees, (2) supervising and controlling employee work schedules or conditions of employment, (3) determining the rate and method of payment, and (4) maintaining employment records.

Further, the Gearners have at least as much involvement as the owner in *Donovan* since they, too, managed the company's finances, authorized the policies that dealt with FLSA compliance, selected managers, occasionally travelled to inspect jobsites, and Drebco was their family business. They easily had more direct involvement than the CEO in *Roche*.

There are, at the very least, genuine issues of material fact for the jury to decide regarding the Gearners' employer status.

### B. EMPLOYEE / INDEPENDENT CONTRACTOR

Defendants argue that Plaintiffs were not employees under the FLSA but were, instead, nonemployee independent contractors. However, when applying the relevant "economic realities" factors—and even the Gearners' own testimony—the conclusion that Plaintiffs were employees is unavoidable.

#### 1. Applicable Law

"To determine if a worker qualifies as an employee, we focus on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead

in business for himself." *Hopkins v. Cornerstone Am.*, 545 F.3d 338, 343 (5th Cir. 2008). Five non-exhaustive factors are considered:

a) "the degree of control exercised by the alleged employer;

b) the extent of the relative investments of the worker and the alleged employer;

c) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer;

d) the skill and initiative required in performing the job; and

e) the permanency of the relationship." *Id*.

Courts may also apply a sixth factor: whether the worker's services were "an integral part of" the employer's business. *Hobbs v. Petroplex Pipe & Constr., Inc.*, 946 F.3d 824, 836 (5th Cir. 2020). The more integral the plaintiffs' services are to the business, the more likely that the parties have an employer-employee relationship. *Id.*

In *Hopkins*, the court analyzed whether sales leaders were employees or not. 545 F.3d at 343. It found that the control factor weighed in favor of an "employee" finding because (1) the company controlled the hiring and firing of the other workers in the workgroup, (2) the company was the primary source of the plaintiffs' income, (3) the company controlled the placement of new hires, and (4) the company determined the geographical region of operation. *Id* at 343.

The court found that the investment factor weighed in favor of an "employee" finding because the company's investment (offices, contracts, accounting services, underwriting products) outweighed the plaintiffs' minimal investments. *Id*. at 344. The profit/loss factor pointed toward an "employee" finding because the company controlled the determinants' profit or loss through hiring, firing, worker assignments, and paying commissions. *Id.* at 344-45.

The skill and initiative factor favored an "employee" finding because the skills used by the plaintiffs (general management skills) were common to all effective managers and not specialized. *Id*. at 345. Finally, the permanency factor pointed toward an "employe finding" because the

plaintiffs worked exclusively for the company and could not easily take the business elsewhere since their team of subordinate salespeople belonged to the company. *Id.* at 345-46.

Similarly, in *Johnson v. Hous. KP, LLC*, the court found that the plaintiffs (club dancers) were employees under the FLSA because:

> (1) **Control**: the club controlled the hours of work, the location of work, the customers who had access to the dancers, and the duration of the dances. The fact that the plaintiffs could work at other clubs did not trump the above facts.
>
> (2) **Investment**: the club spent on advertising, rent for the premises, and insurance. The dancers' investment in makeup and attire did not outweigh these employer investments.
>
> (3) **Profit/Loss**: the club controlled the advertising, nights of operation, and quality of the facilities.
>
> (4) **Skill/Initiative**: dancing at the club did not meet the skill or initiative requirement for a "nonemployee" finding because it mainly involved showing up and picking which customers to focus on, which is not a unique skill.
>
> (5) **Permanency**: the permanency factor was neutral because the dancers worked widely varying periods of time at the club and it was unknown whether the dancers worked anywhere else during their tenures.
>
> (6) **Integral**: the dancers were one of the main revenue generators and customer draws for the club, so their services were integral to the club's business.

588 F. Supp. 3d 738, 744-47 (S.D. Tex. 2022).

In *Donovan v. Tehco, Inc.*, the plaintiff was held to be an employee because he had no business organization, only owned hand tools, supplied only his labor, and had no power to hire and fire workers assisting on jobsites. 642 F.2d 141, 143 (5th Cir. 1981).

## 2. All economic realities factors favor an employee finding.

Defendants employed crews consisting of some workers who were designated employees and were paid overtime and other workers who were designated independent contractors and not paid overtime. Ex. 1, 25:23 – 26:3; Ex. 2, 76:14-22, 77:20-22. These men worked side-by-side on the same projects, at the same sites, at the same times, and in the same crews. Ex. 4, 27:12 – 28:8; 29:19 – 30:23; Ex. 1, 28:4-11; Ex. 2, 84:5 – 85:10; Ex. 5, Int. 1, 3, 4.

Importantly, there was no difference between these crewmembers in the realm of job duties, company control, permanency, investment required, skill/initiative, etc. Ex. 2, 84:24 – 85:10; Ex. 4, 27:12 – 28:8; Ex. 5, Int. 1-4. Defendants simply designated those who were paid a day rate as independent contractors and those who were paid hourly as employees. Ex. 1, 25:23 – 26:3.

The Gearners admitted that the crewmembers who were designated as employees—again, who were *identical* to the "independent contractor" crewmembers regarding all six relevant factors—were properly designated as employees. Ex. 2, 76:14-22, 78:1-25; Ex. 1, 43:10-14. In fact, one Plaintiff, Humberto Rodriguez, was a typical crewmember and was actually designated by Defendants as an employee. Ex. 6, Int. 2. This amounts essentially to an admission that the remaining Plaintiffs should have also been designated as employees since the only distinction is hourly versus day rate pay, which is not a relevant factor.

The Plaintiffs were all crewmembers who took orders from Drebco as far as where to work, what to do, and how to do it. Ex. 4, 27:12 – 28:8; Ex. 2, 90:7 – 91:6; Ex. 5, Int. 2-4. Drebco had total control over their work.

They all used expensive equipment owned by Drebco, not themselves. Ex. 2, 91:23-25, 92:11-15. Plaintiffs were all paid simple day rates and had no individual investment in the projects, so their profit or loss was completely controlled by Defendants. Ex. 2, 91:23-25, 92:11-15; Ex. 5, Int. 5. The skill or initiative required to work on the crew was merely to be physically well and durable enough to withstand the long, physical workdays. Ex. 4, 9:22 – 10:4; Ex. 5, Int. 4.

Plaintiffs were not able to work for other employers during their tenures with Defendants since the work required being out of town and 5-7 days of 12-14 hours of work per day. Ex. 2, 91:17-22; Ex. 5, Int. 3. Their tenures ranged from years to months. Ex. 5, Int. 1. Lastly, their work was not only integral to Drebco's operations; their work was the sole source of revenue for Drebco. Ex. 2, 33:13 – 34:10, 44:6-10, 66:6-9, 84:5-14; Ex. 1, 35:24 – 36:17.

The Plaintiffs were not hired on a project-by-project basis but were, instead, Drebco employees that were regularly shuffled between different crews and jobsites. Ex. 4, 54:2-15.

All six factors heavily favor the finding that Plaintiffs were employees, not independent contractors, and do so even more than they did for the plaintiffs in *Hopkins*, *Johnson*, and *Donovan*. In fact, Plaintiffs would have a strong argument that *they* are entitled to summary judgment on the issue given the one-sidedness of the facts on the matter.

### C. EXEMPTIONS FOR TJ STEELE

Defendants posit that TJ is exempt from the FLSA's overtime provisions under the outside sales exemption and the executive exemption. He qualifies for neither exemption.

#### 1. Burden of Proof and Primary Duty

The burden of proving that the employee falls within an exemption lies with the employer, not the employee. *Johnson v. Heckmann Water Res. (CVR)*, 758 F.3d 627, 630 (5th Cir. 2014). The Supreme Court has also instructed that FLSA exemptions in "are to be narrowly construed against the employers seeking to assert them." *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 879 n.7, 187 L. Ed. 2d 729 (2014).

Each exemption requires certain job duties, which do not overlap with each other, to be the employee's "primary duty." *See* 29 CFR § 531.500 (outside sales); 29 CFR § 541.100 (executive). "Primary duty" means the principal, main, major, or most important duty the employee performs. 29 CFR § 541.700(a). The amount of time spent on the duties is the main guide in determining what duties are primary, and the 50% mark is generally the cutoff for which duties are primary. *Id.* at (b); *Rainey v. McWane, Inc.*, 552 F. Supp. 2d 626, 629 (E.D. Tex. 2008).

Therefore, Defendants' position is self-defeating in that either one or neither exemption applies, not both. But the answer is neither as will be made clear below.

### 2. Outside Sales Exemption

#### a) Applicable Law

To qualify for the outside sales overtime exemption, the employee's primary duty must be making sales or obtaining contracts for services customarily and regularly away from the employer's place of business. 29 CFR § 541.500.

For example, in *Killion v. KeHE Distribs., LLC*, the appellate court reversed the trial court's summary judgment on the outside exemption issue because the plaintiffs merely input orders for products while other employees actually controlled the volume of sales and their "sales" were contingent on company approval. 761 F.3d 574, 584-85 (6th Cir. 2014).

In *Merritt v. Tex. Farm Bureau*, the court denied the employer's summary judgment motion on the outside sales exemption where the plaintiff did not have authority to complete sales without company approval and the company retained the authority to reject sales for business reasons. No. W-19-CV-00679-DTG, 2023 U.S. Dist. LEXIS 86128, at *9 (W.D. Tex. 2023).

In *Miller v. Team Go Figure, L.L.P.*, the court denied the employer's motion for summary judgment regarding the outside sales exemption where the employee spent only 25% of his time on outside sales calls. Civil Action No. 3:13-cv-1509-O, 2014 U.S. Dist. LEXIS 65425, at *11 (N.D. Tex. 2014).

#### b) *TJ does not qualify for the outside sales exemption*.

TJ's primary duty was unequivocally manual labor like the rest of the crew. Ex. 3, 103:24 – 104:5; Ex. 5, TJ, Int. 3-4. In fact, both Sammy, a Defendant, and Keen Glover, a family friend of the Gearners who gave his remote deposition from the Gearners' home (Ex. 4, 8:12-16), both admit that the vast majority of TJ's time was spent performing manual labor as a part of the crew. Ex. 2, 92:11 – 93:7; Ex. 4, 58:4-21. Sammy personally observed TJ on the jobsites and admitted that he saw TJ performing manual work just like the rest of the crewmembers. Ex. 2, 93:1-7.

Therefore, the overwhelming evidence is that TJ's primary duty was **not** making sales or obtaining contracts for Drebco, which puts him outside of the outside sales exemption.

Further, the contracts TJ attempted to arrange still required the Gearners' consent and signature; TJ did not have authority to close deals unilaterally for Drebco. Ex. 3, 72:25 – 73:22; 82:17-23, 84:4-9. These facts parallel the plaintiffs in *Merritt* and *Killion* and, also, would independently necessitate the denial of Defendants' motion for summary judgment on this exemption.

Defendants are nowhere near satisfying their substantial summary judgment burden to prevail on the outside sales exemption.

### 3. Executive Exemption

#### a) Applicable Law

To qualify for the executive exemption:

(1) The employee's primary duty must be management of the enterprise or a customarily recognized department or subdivision of the company,

(2) The employee must direct the work of two or more other employees, and

(3) The employee has the authority to hire or fire other employees or whose suggestions thereto are given particular weight.

29 CFR § 541.100. All of these elements must be met to qualify for the exemption. *Id.*

"Management" means activities such as setting rates of pay, setting hours of work, maintaining production records, handling complaints, planning and controlling the budget, and monitoring or implementing legal compliance measures. *Id.* at § 541.102.

Importantly for this case, the phrase "customarily recognized department or subdivision" means a unit of the company with permanent status and function, not "a mere collection of employees assigned from time to time to a specific job or series of jobs." *Id.* at § 541.103(a).

In *Wirtz v. C & P Shoe Corp.*, the Fifth Circuit held that two warehouse managers could not qualify for the executive exemption because they performed essentially the same work as the employees they supervised. 336 F.2d 21, 28 (5th Cir. 1964).

In another case, the Fifth Circuit held that an employee could not qualify for the executive exemption where her primary duty was not management of the company's office because her *primary* responsibilities were not training, supervising, disciplining, and evaluating employees even though she directed the work of two or more employees and engaged in various supervisory tasks. *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 332-33 (5th Cir. 2000).

Lastly, in *Aponte v. Tex. Health Presbyterian Hosp.*, an employer's summary judgment motion was denied by this Court because the employer failed to establish conclusively that the plaintiff's primary duty was management and whether she had hiring and firing authority. 4:15-CV-00422, 2016 U.S. Dist. LEXIS 180315, at *9 (E.D. Tex. 2016).

### b) *TJ does not qualify for the executive exemption.*

Again, TJ's primary duty was manual labor like the rest of the crew. Ex. 3, 103:24 – 104:5; Ex. 5, TJ, Int. 3-4. Sammy and Keen Glover both admit that the vast majority of TJ's time was spent performing manual labor as a part of the crew. Ex. 2, 92:11 – 93:7; Ex. 4, 58:4-21. Sammy testified that when he was physically on the jobsite, he saw TJ performing manual work just like the rest of the crewmembers. Ex. 2, 93:1-7.

This, alone, necessitates the denial of Defendants' summary judgment motion on the executive exemption.

But there is more. The exemption requires that TJ's primary duty be managing "the enterprise" or "customarily recognized department or subdivision of the company" and ***not*** a "mere collection of employees assigned from time to time to a specific job or series of jobs". 29 CFR § 541.103. Glover, a defendant witness, testified that the crews, which TJ allegedly managed, were merely "*a collection of employees assigned from time to time to specific jobs*" and "*weren't a specific department or division of Drebco.*" Ex. 4, 54:2 – 55:5. He literally admitted to the exact

statutory language that would exclude TJ's supposed "management" from the executive exemption.

Further, the Gearners, not TJ, were the ones engaging in the enterprise "management" activities listed in the regulations such as setting rates of pay, setting hours of work, maintaining production records, handling complaints, planning and controlling the budget, and monitoring or implementing legal compliance measures. Ex. 1, 21:6-17, 23:17-25, 28:12-20; Ex. 3, 77:14-24, 78:17 – 79:2, 82:17 – 83:3, 83:12-19, 86:5-13; Ex. 4, 31:14-25, 42:10-24; Ex. 5, Int. 2; Ex. 6, Int. 1.

TJ is much further from falling under the executive exemption than the plaintiffs in *Wirtz*, *Lott*, and *Aponte*, who each could not be held to qualify under the exemption as a matter of law.

Like the outside sales exemption, Defendants are nowhere near meeting their summary judgment burden to show that there is no genuine issue of material fact regarding the executive exemption. Like "employee" issue briefed above, summary judgment may actually be appropriate for Plaintiffs on the executive exemption issue.

## VI. CONCLUSION

The evidence presented by Plaintiffs raise genuine issues of material fact, precluding summary judgment. The Court should deny the motion for summary judgment and allow the case to proceed to trial to determine liability of Defendants under the FLSA.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants' Motion for Partial Summary Judgment be denied and for such other and further relief, general and special, at law or in equity, to which Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

*/s/ Eric Kolder*

ERIC KOLDER

        State Bar No. 24083323
        eric@kolderfirm.com
        MARY KOLDER
        State Bar No. 24083324
        mary@kolderfirm.com
        **KOLDER LAW FIRM, PLLC**
        102 N. College Ave., Suite 402
        Tyler, Texas 75702
        (903) 350-4227
        *ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service December 23, 2025. Local Rule CV-5(a)(3)(A).

        /s/ *Eric Kolder*
        ERIC KOLDER