UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

———

No. 6:24-cv-00505

———

**Tommy Steele et al.,**
*Plaintiffs,*

v.

**Drebco Directional, LLC, et al.,**
*Defendants.*

———

## OPINION ON JURY INSTRUCTION

Plaintiffs sued Drebco Directional, LLC, ("Drebco") and its two owners, Dreben "Sammy" Gearner, III and Kara Gearner, for alleged violations of wage obligations under the Fair Labor Standards Act (FLSA). The case proceeded to a jury trial. At the charge conference, the court addressed the parties' proposed instruction that the jury consider a multi-factor "economic reality" test to decide whether either or both of the Gearners were individually liable, in addition to Drebco, as "joint employers" of Drebco's employees.

The court charged the jury on that theory. But the court added a caveat that the Gearners' joint *decisions* on behalf of Drebco are not enough to make them joint *employers* of Drebco's employees. Doc. 52 at 14. The court now provides this opinion to explain its reasons for that addition. More broadly, this opinion questions use of the multi-factor "economic reality" test to displace state law governing a corporate officer's personal-capacity liability for company obligations arising from the officer's work for the company.

## I. Procedural background

Plaintiffs sued not only Drebco but also its owners, the Gearners, seeking a damages judgment against each defendant under the FLSA. Doc. 16 at 7. Plaintiffs argued that the Gearners, as Drebco's owners and officers, managed the company's payroll, approved the hiring and firing of its employees, and directed its work crews. Plaintiffs alleged that each of the Gearners was, along

with Drebco, a "joint employer" of each plaintiff and therefore liable from personal assets for the alleged FLSA violations.

The parties proposed that the court should instruct the jury as follows on the question of plaintiffs' status as employees of the Gearners in addition to Drebco:

> In this case, you must decide whether Plaintiffs were an employee of Defendant Drebco as well as an employee of Defendant Sammy Gearner and Defendant Kara Gearner. You should answer this question in light of the economic realities of the entire relationship between the parties based on the evidence.
>
> Consider the following factors to the extent you decide that each applies to this case:
>
> > (a) the nature and degree of control over the employee and who exercises that control;
> >
> > (b) the degree of supervision, direct or indirect, over the employee's work and who exercises that supervision;
> >
> > (c) who exercises the power to determine the employee's pay rate or method of payment;
> >
> > (d) who has the right, directly or indirectly, to hire, fire, or modify the employee's employment conditions;
> >
> > (e) who is responsible for preparing the payroll and paying wages;
> >
> > (f) who made the investment in the equipment and facilities the employee uses; and
> >
> > (g) the employment's permanence and duration.
>
> While no single factor is determinative, the extent of the right to control the means and manner of the worker's performance is the most important factor.

Doc. 50 at 18. That instruction tracked § 11.27 of the *Pattern Jury Instructions (Civil Cases)* prepared by the Fifth Circuit District

Judges Association (hereinafter, Pattern Jury Instructions). That pattern instruction does not mention the relevance of a defendant's status as owner or officer of a corporate codefendant sued on the same alleged FLSA obligation.

But the Fifth Circuit has held that merely being a corporate owner or officer is not enough to subject an individual to liability as a joint employer under the FLSA, even if the owner or officer participates in joint decisions for the corporation. *See Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012) ("Powers's participation in a joint decision with co-owners of PEG proves nothing about whether Powers had the authority individually to control employment terms of lower-level employees."); *id.* at 355–56 ("The cases do not suggest, however, that merely being an officer or shareholder subjects an individual to FLSA liability.").

So the court modified the proposed instruction to add the following caveats from *Gray*, as applied to the facts of this case:

> The fact that defendants Sammy Gearner and Kara Gearner jointly owned defendant Drebco or made joint decisions on behalf of defendant Drebco is not enough to make them employers under the Fair Labor Standards Act. Each must qualify as an employer under the FLSA for each employee.

Doc. 52 at 14. The jury ultimately did not reach that issue because it found that Drebco did not violate its FLSA wage and overtime obligations. *See* Doc. 54.

## II. Concerns with reading the FLSA to override state rules of individual liability of corporate owners and officers

The parties' proposed jury instruction treats the "economic reality" test that governs one question as equally governing another. The first question is whether a laborer is an employee of another or a mere contractor to another. The second question is whether actions controlling a company make a company owner or officer liable in his or her individual capacity for the same alleged FLSA violation as the company. The court provides this opinion to explain its concern, which underlies its addition to the jury

instruction here, and more broadly to note the need for appellate clarification of the governing framework.

### A. Owner and officer separateness from corporations

The FLSA claims here posed two distinct questions: (1) Was a given plaintiff an employee of Drebco or a mere independent contractor of Drebco? (2) If Drebco was an employer of a given plaintiff, was Sammy or Kara Gearner also, in his or her individual capacity, a joint employer of that plaintiff and thus personally liable for any FLSA violation? Those questions differ materially because only one intersects with state statutory law and common law on the limited liability of corporate owners and officers for corporate obligations.

#### 1. Liability of corporate owners

State law insulates the shareholders of a corporation from personal liability for corporate obligations. *E.g.*, Tex. Bus. Orgs. Code §§ 21.223, 21.224. The same is true for members of limited liability companies. *E.g.*, *id.* § 101.114. For brevity, this opinion refers to such limited-liability companies simply as "corporations" and to such company members and corporate shareholders collectively as "owners." That limitation of liability exists not merely in state statutes but as a "venerable common-law backdrop." *United States v. Bestfoods*, 524 U.S. 51, 62 (1998); *see id.* at 61–62 (noting that "it is hornbook law that the exercise of the control which stock ownership gives to the stockholders will not create liability" beyond an owner's capital contribution) (cleaned up); *Anderson v. Abbott*, 321 U.S. 349, 361 (1944) ("Normally the corporation is an insulator from liability on claims of creditors.").

That statutory and common-law limitation of liability may be pierced in exceptional circumstances, such as when the corporate form is used to evade legal obligations or shield fraud. *See, e.g.*, Tex. Bus. Orgs. Code § 21.223; *Willis v. Donnelly*, 199 S.W.3d 262, 272 (Tex. 2006); *see Dewberry Grp., Inc. v. Dewberry Eng'rs Inc.*, 604 U.S. 321, 327 (2025) (noting "background principles of corporate law" that, in select circumstances, "prevent corporate formalities from shielding fraudulent conduct"). The details of that

veil-piercing doctrine need not be explored here. The point is simply that it exists; a distinct body of law defines the extent of owners' personal liability for corporate obligations. That law reflects the states' judgments on how to best promote the public good. *Willis*, 199 S.W.3d at 271 ("Avoidance of personal liability is not only sanctioned by the law; it is an essential reason that entrepreneurs . . . choose to incorporate their businesses.").

### 2. Liability of corporate officers

Similarly, corporate officers and other agents who act on behalf of a corporation are generally not bound in their personal capacity by duties owed by the corporation. *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996) ("Thus, unless alter ego is established, corporate officers and agents are subject to personal liability for their actions within the employment context only when they breach an independent duty of care."); *e.g.*, *Reynolds v. Bement*, 116 P.3d 1162, 1169 (Cal. 2005), *as modified* (Sept. 7, 2005) ("Under the common law, corporate agents acting within the scope of their agency are not personally liable for the corporate employer's failure to pay its employees' wages.").

That is merely a limitation on imputing a principal's duties to its agent. It does not lift or excuse duties that an agent would independently owe regardless of a purpose to serve a principal, such as tort-law duties of reasonable care. *Keyes v. Weller*, 692 S.W.3d 274, 280–82 (Tex. 2024); Restatement (First) of Agency § 343 (1933) ("An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal . . . ."). But no plaintiff claimed that Sammy or Kara Gearner independently owed them duties as an employer, regardless of whether Drebco was the plaintiff's employer. Rather, each plaintiff agreed that his joint-employment claim against the Gearners depended on the plaintiff first establishing an employment relationship with Drebco.

As that point shows, the pay duties alleged here are statutory regulations on a voluntary relationship, not independent duties arising in tort law. *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 51

(1st Cir. 2013) ("The FLSA . . . permits employers and employees to contract about certain terms and conditions of employment . . . as long as those contractual provisions remain consistent with the FLSA's provisions and purposes."); *see* Restatement (Second) of Torts div. nine introductory n. (1979) ("the law of labor disputes . . . has ceased to be regarded as a part of Tort Law"). Consequently, unless the FLSA broadens an agent's liability beyond background limits, the Gearners' conduct as officers managing Drebco's employees would not cause them to personally assume Drebco's FLSA duties.

Of course, agency law itself defines exceptional circumstances in which an agent is bound personally on the obligations of his or her principal. *E.g.*, *Leitch*, 935 S.W.2d at 117 (noting alter-ego theory); Restatement (Third) of Agency § 6.04 (noting that an agent is personally bound by a contract if he knows that the purported principal lacks capacity); *Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010) (noting that "the 'corporate veil' shields a company's officers from personal liability for direct infringement that the officers commit in the name of the corporation, unless the corporation is the officers' 'alter ego.'"). But that body of law does not enter this case. Plaintiffs did not allege alter ego or another common-law exception to an agent's non-liability on a principal's duties.

### B. The FLSA does not override that background law.

As just explained, state statutory and common law does not impose personal liability for corporate obligations arising from one's conduct as an officer of a company. Likewise with corporate obligations created by one's decision as owner of a company. Absent special circumstances defined by state law, officers and owners are not personally liable for corporate duties. Given that analytical parallel, this opinion generally refers to both types of liability limitation as those of a corporate "officer" for brevity.

Plaintiffs' claims against the Gearners in their personal capacity must look to the FLSA to override that background law. That is possible. But just as a statute or regulation might override

- 6 -

background limits on liability, it might not. *See, e.g.*, *Martinez v. Combs*, 231 P.3d 259, 279 (Cal. 2010) ("[T]he IWC's definition of 'employer' does not impose liability on corporate agents acting within the scope of their agency."); *Boucher v. Shaw*, 196 P.3d 959, 964 (Nev. 2008) (holding that a state law did not "extend personal liability [for unpaid wages] to individual managers of corporations in derogation of existing Nevada corporate law").

The Supreme Court has never addressed whether the FLSA displaces state law governing when corporate officers are liable on a corporate employer's obligations to its employees. The dominant view in lower courts, however, "is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014). That view is in tension with several interpretive principles.

In explaining that conclusion, the court begins with the statutory text and context and then moves to doctrinal boundaries that have blurred over time and finally to canons of construction. The ultimate point is not that corporate officers and owners are never personally liable under the FLSA for their conduct in that capacity. The point is that the body of law governing that liability is supplied by state law, not a multi-factor test that is ill-suited for this context and does not appear in the FLSA. Nothing here addresses one who employs a corporation's worker independently of the corporation, operates through a sham entity, acts as the alter ego of the corporation, or is personally bound under ordinary agency principles. Nor does it address economically separate entities that jointly employ the same workers.

### 1. Statutory text and context

Congress enacted the FLSA during the Great Depression to remedy labor conditions that undermined workers' health and well-being. *See Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing 29 U.S.C. § 202(a)). The Act included two provisions requiring a minimum wage and overtime pay. The first requires "[e]very employer" to "pay to each of his

employees" engaged in defined work a minimum wage, which is currently set at $7.25 per hour. 29 U.S.C. § 206(a). The second forbids an "employer" from "employ[ing] any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for such employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." *Id.* § 207(a)(1).

The Act defines a "person" to include any individual, corporation, or other business. *Id.* § 203(a). The Act then states:

> "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

*Id.* § 203(d). The word "employer" as used in that definition is not defined in the first instance. *See id.*; *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013).

The Act then defines "employee," with exceptions not relevant here, as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "Employ," in turn, "includes to suffer or permit to work." *Id.* § 203(g). That definition of "employ" "is broad," *McComb*, 331 U.S. at 728, and derives from child-labor laws that imposed liability not only on businesses that directly employed children but also on businesses that used agents or middlemen to illegally hire and supervise children. *Salinas v. Com. Interiors, Inc.*, 848 F.3d 125, 133 (4th Cir. 2017). The breadth of that definition "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992).

Those definitions feed into the substantive provisions governing minimum wage and overtime. Both substantive provisions are an affirmative obligation on every "employer." 29 U.S.C. §§ 206(a), 207(a)(1). Consequently, if a corporate officer with

- 8 -

"control" over the corporation's employees, *see* Pattern Jury Instructions § 11.27, is for that reason an "employer" himself or herself, that officer would have a personal obligation to pay wages and overtime out of his or her own assets—which an employee could obtain even without demanding the same of the corporation. *Id.* § 216(b) (making any "employer" "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages").

### 2.  Section 203(d) as an attribution provision

The better reading, however, is that exercising authority as a corporate officer to control a corporation's employees does not thereby create a personal-capacity FLSA obligation. Some courts view § 203(d)'s definition of "employer" as "broad[] enough" to treat a corporate officer or another corporate agent as the employer, provided that person exercised control over the plaintiff and was responsible at least in part for the alleged FLSA violation. *See Manning*, 725 F.3d at 37; *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987). But read as a whole, § 203(d) is a rule of attribution. It assumes a preexisting "employer" whose interest is being served and, then, deems a qualifying representative as being "include[d]" in that existing employer. The section's "in the interest of" language presupposes a separate principal. The provision thus operates to prevent employers from interposing labor brokers or middlemen to evade liability.

"Employer" in § 203(d) already has a primary referent—the person or entity who "employs" under § 203(g). The "includes" clause does not redefine "employs" but expands the universe of persons whose conduct is deemed that of an existing "employer," to reach indirect agents and representatives. If § 203(d) operated by adding a person as an independent "employer," rather than including him or her as part of an existing "employer," the clause would become self-referential. A corporate officer would qualify as an "employer" because she acted "in the interest of an employer," triggering the provision's application again.

The most natural reading is thus that § 203(d) deems a qualifying person part of a separate employer in the capacity in which that person acts for that employer. It defines a corporate employer (or any other employer) through the identity and acts of those who serve its interest. It does not multiply the set of liable parties.

The second clause of § 203(d) supports that interpretation. It states that the term "employer" "does not include any labor organization . . . or anyone acting in the capacity of officer or agent of such labor organization." 29 U.S.C. § 203(d). If § 203(d) is an attribution provision—one that defines when an employer is liable for the actions of another—that section's carve-out makes sense. It specifies that union agents' conduct in their capacity working for a labor organization (a capacity that might be viewed as controlling the terms and conditions of the labor of union members) is not attributed to the union for purposes of making it an "employer" of the represented laborers. The exemption thus operates on the labor union's personnel "in the[ir] capacity" as the union's agents. *Id.* The exemption does not need to exempt the union's agents in their personal capacity because § 203(d)'s first clause does not impose such liability in the first place.

Yet it is § 203(d) alone that must bear the interpretative weight on the joint-employer claims here. As noted, all parties agreed that, if Drebco did not employ but merely independently contracted with a given plaintiff, then the Gearners did not employ that plaintiff either. So the Gearners' alleged liability as joint employers must come from § 203(d), if at all, not from independently satisfying § 203(g)'s definition of "employ."

### 3. The NLRA's parallel language

That reading also comports with how the "acting . . . in the interest of" language originally common to both the FLSA and the National Labor Relations Act (NLRA) was understood. Congress enacted the NLRA two years before the FLSA. Pub. L. No. 198, 49 Stat. 449 (July 5, 1935). As originally enacted, the NLRA defined "employer" to "include[] any person acting in the interest of an employer, directly or indirectly." *Id.* § 2, 49 Stat. at 450.

- 10 -

In 1947, Congress changed that definition, replacing the phrase "any person acting in the interest of an employer" with "any person acting as an agent of an employer." Labor Management Relations Act, Pub. L. No. 101, § 101, 61 Stat. 136, 137 (June 23, 1947). Congress reportedly made that change in response to National Labor Relations Board decisions which "ha[d] on numerous occasions held an employer responsible for the acts of subordinate employees and others although not acting within the scope of any authority from the employer, real or apparent." H.R. Rep. No. 510, at 31 (June 3, 1947).

As that shows, the "in the interest of" language originally common to the NLRA and FLSA was understood as a rule of attribution: it identified when a representative's conduct (originally perhaps even unauthorized conduct, under the NLRA) could be ascribed to a principal—the employer. *See, e.g.*, *Consumer's Power Co. v. NLRB*, 113 F.2d 38, 43–45 (6th Cir. 1940) (rejecting challenge to NLRB order holding employer responsible for supervisors' unauthorized acts). The 1947 NLRA amendment narrowed the scope of that statutory attribution by limiting a principal's responsibility to conduct of agents acting within their authority. But it did not abandon, and indeed confirmed, the attributive function itself.

That attribution function is not in play when a worker contends that a corporate officer is herself personally an employer under the FLSA. The question there is not whether a corporate officer's conduct in controlling work may be attributed to the corporation. It can, and that is why the corporation is the employer. The question there is whether the same conduct also makes the officer a separate employer with personal-capacity obligations, not merely obligations in her capacity as a corporate officer, to be satisfied using corporate resources. The FLSA's language addresses the first question. It does not address the second, leaving that question to be answered by background principles of state statutory and common law.

### 4. The EEOA's similar language

The view that the FLSA overrides background law limiting corporate officers' liability for corporate obligations also creates divergence with courts' interpretation of the Equal Employment Opportunity Act (EEOA). The EEOA states that "[t]he term 'employer' means a person" (including a corporation) who has a certain number of employees "and any agent of such a person." 42 U.S.C. § 2000e(b). And the EEOA makes it unlawful for an "employer" to engage in prohibited employment practices. *Id.* § 2000e-2(a).

On the same reasoning criticized above regarding the FLSA, that EEOA definition could similarly be construed as treating an agent of a principal who is an "employer" as being himself an "employer" subject to personal liability for acts on behalf of his principal. That is what the term "means" after all. *Id.* § 2000e(b).

But courts hold that the EEOA definition operates simply as a rule of attribution—imposing liability on a principal for the actions of its agent. *E.g.*, *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities."); *Grant v. Lone Star Co.*, 21 F.3d 649, 652–53 (5th Cir. 1994) ("[T]he purpose of the 'agent' provision in § 2000e(b) was to incorporate *respondeat superior* liability into title VII."); *Strickland v. City of Detroit*, 995 F.3d 495, 510 (6th Cir. 2021) ("[I]t is well-established that only employers, and not individuals in their personal capacity, can be held liable under Title VII."); *see* Restatement (Third) of Agency § 7.01 cmt. c ("[D]iscrimination by an employee that violates 42 U.S.C. § 2000e-2(a) results in liability only for the employer."). That interpretation of the similarly worded EEOA definitional provision further undercuts the persuasiveness of the dominant interpretation of the FLSA definition in 29 U.S.C. § 203(d) as something other than an attribution provision.

### 5. Drift from the employee-vs-contractor issue

The Supreme Court has observed that the FLSA is "comprehensive enough to require its application to many persons and

- 12 -

working relationships, which prior to this Act, were not deemed to fall within an employer–employee category." *McComb*, 331 U.S. at 729. And the Supreme Court has invoked "the expansiveness of the Act's definition of 'employer'" to hold that a management company was an "employer" of building maintenance workers where the company exercised "substantial control of the terms and conditions of the work of th[o]se employees." *Falk v. Brennan*, 414 U.S. 190, 195 (1973).

But *McComb* and *Falk* did not address whether a corporate officer, based on actions in that capacity, is personally liable for the corporation's wage obligations to its employees. *McComb* addressed whether workers were employees at all, as opposed to independent contractors. 331 U.S. at 726. That is a question about the worker's status, not about personal liability of a corporate officer or agent. *Falk* addressed the same question as to two economically independent entities—a management company and a set of building owners—holding that each independent entity employed the same workers. 414 U.S. at 195. Neither *McComb* nor *Falk* suggests that the Court read the FLSA to alter background state-law principles of personal liability for corporate duties created by one's actions as corporate officer or owner.

Lower courts have had "difficulty" developing a "coherent" test to determine whether a laborer is an independent contractor versus an employee of a putative joint employer. *Salinas*, 848 F.3d at 135. Joint employment can occur when, for instance, one company hires another company to serve the first company and then exercises enough control over the second company's employees to become a "joint employer" of them. *See* Pattern Jury Instructions § 11.27. Based on the Supreme Court's instruction that "economic reality" should be "the test of employment," *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961), courts developed a multi-factor test to identify when two otherwise-separate entities jointly employ a worker. *Salinas*, 848 F.3d at 135–36 (citing *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 756 (9th Cir. 1979), and *Hodgson v. Griffin & Brand of McAllen, Inc.*,

471 F.2d 235, 237–38 (5th Cir. 1973)). In this circuit, that test asks whether each putative employer (1) had power to hire and fire employees, (2) supervised and controlled work schedules or work conditions, (3) determined the rate and method of payment, and (4) maintained employment records. *Gray*, 673 F.3d at 355.

The origin of the economic-reality test and the "difficulty" in developing a "coherent" test, *Salinas*, 848 F.3d at 135, underscore the limits of its usefulness here. Early cases construing the FLSA were primarily concerned with "preventing a business entity from causing workers to engage in work without the protections of the statute." *Irizarry*, 722 F.3d at 109–10. But as the Second Circuit recognizes, that "concern is not as pressing when considering the liability for damages of an individual within a company that itself is undisputedly the plaintiffs' employer." *Id*. at 110.

Nonetheless, over the decades, courts have come to analyze the question of a corporate officer's personal liability for corporate FLSA obligations by applying that multi-factor test to decide whether the officer has "operational control" of a corporation's workers. *See, e.g.*, *id*. at 104–06; *Gray*, 673 F.3d at 355; *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983) (citing cases). If so, that corporate officer is treated as "an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan*, 712 F.2d at 1511.

Although the "economic reality" test was originally designed to identify when an employment relationship exists with anyone, the test is now used to also answer a different question: whether the FLSA discards the traditional liability limitation for corporate agents acting in that capacity. But the economic-reality test struggles to meaningfully analyze that question. Its factors often overlap with the traditional expectation of corporate officers: that they manage subordinate employees in the corporation. And its factors do not significantly overlap with what state law examines in disregarding corporate separateness: indicia of abuse or misuse of business forms. Tests that focus solely on the existence of an employment relationship "do not address, much less solve," the joint-

- 14 -

employment question. *Salinas*, 848 F.3d at 137. The use of the economic-reality test to answer that question here thus appears to reflect doctrinal creep rather than a fulsome analysis of pertinent considerations in the corporate-officer context.

### 6. Canons of construction

The issue whether § 203(d) imposes personal liability for corporate obligations arising from one's actions as corporate officer or owner must also be informed by applicable interpretive canons.

### a. Displacing state law

The most specific canon relevant here is that federal law incorporates traditional state principles of corporate law unless Congress gives some indication otherwise. *See Dewberry*, 604 U.S. at 327 ("Nor do background principles of corporate law convert the one into the other. We have often read federal statutes to incorporate such principles, on the view that Congress would not have wanted to displace 'bedrock' features of the common law."); *Meyer v. Holley*, 537 U.S. 280, 286 (2003) ("Congress' silence, while permitting an inference that Congress intended to apply ordinary background tort principles, cannot show that it intended to apply an unusual modification of those rules." (emphasis omitted)); *United States v. Bestfoods*, 524 U.S. 51, 63 (1998) ("[T]he failure of the statute to speak to a matter as fundamental as the liability implications of corporate ownership demands application of the rule that in order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law . . . ." (cleaned up)). Indeed, the Fifth Circuit has warned that "it should not lightly be inferred that Congress intended to disregard" those principles "in the context of the FLSA." *Gray*, 673 F.3d at 356.

That specific interpretive canon relates to the more general canon against interpreting federal law to displace fundamental state law absent some clear sign. *See, e.g., BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 544 (1994) ("To displace traditional state regulation in such a manner, the federal statutory purpose must be 'clear and manifest' . . . ."); *Gregory v. Ashcroft*, 501 U.S. 452, 460–

61 (1991) ("This plain statement rule is nothing more than an acknowledgment that the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere."). A similar rule applies to reading statutes to displace common-law principles. *United States v. Texas*, 507 U.S. 529, 534 (1993) ("In order to abrogate a common-law principle, the statute must speak directly to the question addressed by the common law." (cleaned up)).

The separateness of a corporation's duties from those of its officers and owners is a foundational feature of state law. It reflects state judgments about how to best facilitate entrepreneurial activity while ensuring, through veil-piercing rules, that business forms are not abused. That is a traditional and legitimate state interest. *See CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 91, (1987) ("A State has an interest in promoting stable relationships among parties involved in the corporations it charters . . . ."); *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008) (explaining that a "bedrock principle of corporate law" is "that a legitimate purpose for forming a corporation is to limit individual liability for the corporation's obligations").

Reading the FLSA to impose personal liability for corporate obligations would displace states' judgments regarding the corporate form. It would impose personal liability on corporate officers and owners without requiring a showing of undercapitalization, fraud, abuse of the corporate form, a principal's known lack of capacity, or other factors that would justify that result under state law. One would expect a drafter intending that result to provide some clear statement to that effect, not merely a definitional provision that reads more naturally as an attribution rule.

### b. Statutory purposes

Some cases that apply the "economic reality" test in the corporate-officer context also emphasize the FLSA's purposes. *See, e.g.*, *Irizarry*, 722 F.3d at 110; *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989). They do so at two levels of generality.

At the narrowest level, those cases note that the FLSA expanded the employee-rather-than-contractor category beyond common-law formalities. That is true. But that is not the issue here. The jury instruction at issue speaks to the situation in which the jury has already found that a worker is an employee of a corporate employer and, thus, not an independent contractor. The issue is then what body of law controls whether an officer or owner of that corporate employer is not merely subject to obligations in a corporate capacity (e.g., to commit corporate resources to pay damages) but also personally liable.

The Fourth Circuit recognizes that distinction. *See Salinas*, 848 F.3d at 138 ("The second problem with the *Bonnette* factors and related tests—their focus on whether 'as a matter of economic reality, the individual is dependent' on a putative joint employer—also reflects a failure to distinguish the joint employment inquiry from the separate, employee-independent contractor inquiry.") (citation omitted). And the importance of that distinction is underscored by the Supreme Court's instruction, *see supra*, that ambiguous statutes not be read to displace traditional areas of state regulation.

At a more general level, some courts have emphasized the FLSA's remedial purposes. *Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 194 (5th Cir. 1983) ("In so doing, we adhere to the firmly-established guidon that the FLSA must be liberally construed to effectuate Congress' remedial intent."); *Irizarry*, 722 F.3d at 110 ("Even in the individual-liability context, however, the remedial nature of the FLSA warrants an expansive interpretation . . . ." (cleaned up)).

The trajectory of recent FLSA interpretation warrants caution in applying that methodology. In *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88–89 (2018), the Supreme Court disagreed that FLSA exemptions must be "construed narrowly" considering the Act's remedial purpose. And in *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 47 (2025), the Court rejected a heightened evidentiary standard for proving FLSA exemptions, reaffirming that

the Act is not entitled to different interpretive conventions than other civil statutes. Those decisions arose in the context of FLSA exemptions, but they reflect a broader concern that the FLSA's remedial purpose does not justify reading its provisions differently than the text naturally supports.

### III. Effect on the jury instruction here

Under circuit precedent, this court instructed the jury on the four-factor "economic reality" test for whether either Sammy or Kara Gearner was personally liable, jointly and severally with Drebco, for any FLSA violation. Doc. 52 at 14–15. But the concerns described above led the court to add to Pattern Jury Instructions § 11.27 a further point: the joint decisions of the Gearners on behalf of Drebco could not alone establish their FLSA liability as joint employers. *See Gray*, 673 F.3d at 355.

But that addition strikes the court as a half-measure. The court remains concerned that use of the "economic reality" test in this context blurs two, distinct questions and misinterprets § 203(d) by erasing that provision's own focus on the capacity in which an individual acts. Courts would benefit from appellate clarification on whether the FLSA does indeed displace established state-law principles on the personal liability of corporate officers and owners for corporate obligations.

*For the court on May 26, 2026.*

J. CAMPBELL BARKER
United States District Judge

- 18 -